**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLMAN CONSTRUCTION, INC. | ) | Chapter 11 |
| | ) | |
| Debtor in Possession. | ) | Case No. 16-00774 |

**OBJECTION TO AMENDED DISCLOSURE STATEMENT (ECF #153) AND**

**OBJECTION TO MODIFIED CH. 11 PLAN BEFORE CONFIRMATION (ECF #154)**

COMES NOW the Creditors, International Union of Operating Engineers, Local 150, AFL-CIO (hereafter, "Local 150" or "the Union"); Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 IUOE Vacation Savings Plan; Midwest Operating Engineers Retirement Enhancement Fund; and Construction Industry Research and Service Trust Fund ("collectively, the Funds") and hereby object to the Amended Disclosure Statement filed by Debtor.

1.      On August 22, 2016, the Debtor filed a Disclosure Statement (ECF #102).[1] On November 11, 2016, Debtor filed its Amended Disclosure Statement and its Amended Plan of Reorganization (ECF #153 at Page 16; ECF #154).[2]  In its Amended Disclosure Statement, Debtor states that while the Disclosure Statement is designed to provide "'ADEQUATE' information," the Plan shall be controlling (ECF #153 at Page 4).

2.      The Union, and the Funds have a mixture of priority and non-priority claims that total over $63,000.  In the Amended Plan, the Funds and the Union have priority unsecured

---

[1] Where reference is made to "ECF," the Union and Funds refer to a document in the Electronic Case Filing system.
[2] The Debtor filed the Amended Plan as Exhibit 1 to its Amended Disclosure Statement (ECF #153) and then the Amended Plan was separately docketed (ECF #154).

claims that are identified as "Unimpaired" (ECF #153 at Page 18; ECF #154 at Page 3). The Plan

describes the treatment of such claims as follows:

> Paid in full over 60 months from effective date of Plan at 3.25% per annum;
> payments to be made quarterly, first payment due by end of quarter beginning
> with the quarter ending during the effective date of the Plan.

The Funds and the Union also have non-priority unsecured claims that are presumably among the

General Unsecured claims identified as "Impaired" (ECF #153 at Page 18; ECF #154 at Page 3).

The Plan describes the treatment of such claims in the same terms, except that these claims will

be paid over 120 months, instead of 60 months (*id.*).

3.      The Debtor must file a written disclosure statement and a plan of reorganization.

11 U.S.C. §§ 1121, 1125. The disclosure statement must contain information sufficient to enable

a creditor to make an informed judgment about the debtor's plan of reorganization. 11 U.S.C. §

1125. A "disclosure statement must contain all pertinent information bearing on the success or

failure of the proposals in the plan of reorganization [and] all material information relating to the

risks posed to creditors [under the plan]." *In re: Cardinal Congregate*, 121 B.R. 760, 765-66

(Bankr. Ohio 1990); see also 10 *Collier on Bankruptcy* ¶1125.02[2] (Alan N. Resnick & Henry J.

Sommer eds., 16th ed. 2014). The plan of reorganization must include a classification of claims

and specify the treatment that the Debtor proposes to give each class of claims, and identify

adequate means for the plan's implementation. 11 U.S.C. § 1123. As the following shall explain,

the Debtor's disclosure statement and plan of reorganization fail to comply with these

requirements of the Bankruptcy Code.

4.      In this case, it is not possible to determine how the Debtor plans to treat the class

of general unsecured creditors.  In the Amended Plan narrative, Debtor identifies a "Class 3" of

"General Unsecured Creditors" and indicates that these creditors will be paid in full over 120

months at "3.25% per annum"[3] (ECF #153 at Page 18; ECF #154 at Page 3).  On that page of the

Amended Plan, Debtor identifies this class as "Impaired," but does not explain *how* that class is

impaired (*id.*). Then in the exhibit identified as "Plan Payment Calculation and Detail," Debtor

has two sets of "Class III - Unsecured Non-Priority General Claims Allowed," and one of those

classes bears the notation "(50% 0% interest)" (ECF #153 at 32). The reference to "50% 0%

interest" in the exhibits suggests that some members of this class will only receive "50%" of the

sums due, and "0%" interest, rather than the "payment in full" and "3.25% per annum" described

in the Plan narrative (*cf.* ECF #153 at Pages 18, 32). This apparent inconsistency makes it

impossible for general unsecured creditors to determine whether or how the general unsecured

creditors are impaired. Even worse, given that the exhibit has two classes of general unsecured

claimants, one seemingly impaired and one unimpaired, it is not even possible to determine

which creditors' claims might be impaired.

5.      In this case, the Debtor's description of the treatment of claims ("first payment

due by end of quarter beginning with the quarter ending during the effective date of the Plan") is

as unintelligible and ambiguous in the Amended Plan as it was when this language previously

appeared in the original Plan (ECF #153 at Page 18; ECF #154 at Page 3).  After the Union and

Funds objected to this language in the original Plan (ECF #122-128), Debtor acknowledged in

materials filed with the Court that it did not do a good job in describing the treatment of claims

(ECF #146 at Page 1).  Yet Debtor recycled this language for its Amended Plan. If what Debtor

means is "Debtor shall make its first payment at the end of the first full quarter that follows the

Effective Date of the Plan," then it is not clear why the Debtor does not just say *that* instead of

"end of the quarter beginning with the quarter ending," which is confusing and ambiguous.

---

[3] Even in this regard, the Plan is unclear. Although Debtor mentions "3.25% per annum," it fails to actually use the word "interest."

6.       Additionally, the Disclosure Statement indicates that all "union benefits, reports to be current upon filing" (ECF #153 at Page 11).  It is unclear what "filing" Debtor means, but at the present time, Debtor has not paid all of its post-petition debt to the Funds. At present, Debtor owes the Funds $2,063.20 in post-petition debt. Furthermore, the Funds are not optimistic about the claim that Debtor will be "current."  Debtor has paid late every month since April, 2016 except October, and that is only because the Funds' counsel threatened to file a motion to collect that month as well as August and September, which were all outstanding at the time.

7.       Likewise, Debtor understates the amount of pre-petition debt that it owes to the Union and the Funds, claiming in its schedules that it only owes $24,685.36 (ECF #153 at Page 23). The Debtor actually owes over $63,000 in pre-petition debt, a fact that is confirmed by Debtor's own reports, which are attached to the Union and Funds' proofs of claim (*see* Claim Nos. 24-29). Debtor itself advised that the Union and Funds' claims were a $43,000 proposition when Debtor filed for bankruptcy; how it reduced this claim by over $20,000 without permission from the Court is unexplained (ECF #1 at 18).  Accordingly, the Amended Disclosure Statement does not accurately inform Creditors about the Debtor's liabilities, and its ability to meet those obligations in the future.

8.       Moreover, the Amended Disclosure Statement and Plan leave creditors with more questions than answers regarding the relationship between Willman Construction and Tri-State Construction. Mark Willman is the President and Treasurer of both companies (Ex. D). Debtor advises creditors that Debtor, Willman Construction, performs construction work and related entity, Tri-State Construction, has taken over an industrial maintenance contract that was previously serviced by Willman Construction, using the same employees (ECF #153 at Pages 5-6).  Debtor does not tell us what if anything Willman Construction received in return for giving a

4

lucrative contract to Tri-State Construction (*id.*). If the two companies are double-breasted or alter ego operations under the law, then the income from Tri-State should be subject to satisfaction of the claims of the creditors of Willman Construction. Without more facts regarding this relationship, creditors cannot make an informed judgment about the Amended Plan.

9.      Willman Construction has several UCC filings where the collateral is identified as "equipment" (Ex. A). Tri-State has just one UCC filing where the collateral is "leased equipment" (Ex. B).   Debtor, Willman Construction, allegedly employs heavy equipment operators, and Tri-State employs none (ECF #153 at Pages 5-6). Yet, Debtor Willman Construction leases construction equipment from Tri-State Construction, scheduling this equipment rental expense as a "Construction" equipment rental (ECF #153 at Pages 6-7, 19, 24). Debtor has spent $82,000 on equipment rental this year, an amount equal to its net income (ECF #153 at Pages 24-25). If Willman Construction is the construction entity, and Tri-State does not do any construction work, it is unclear why Willman would ever lease construction equipment from Tri-State.  The failure to explain this seemingly contradictory, ongoing expense means that creditors have insufficient information to determine whether the plan should be accepted or rejected.

10.     The transactions between Debtor corporation and the Willmans are also a cause for concern, and neither the Amended Disclosure Statement nor the Amended Plan alleviate that concern. It appears that Willman Construction has paid rent to Mark and Ellen Willman since its inception, currently paying $14,400 a year on property that the Willmans originally acquired for $15,000 (Ex. C; ECF #1 at Page 42; ECF #153 at Page 19; ECF #154 at Page 4).  The Willmans are the sole shareholders, and the only officers (ECF #1 at Page 42; Ex. D).  In 2015, the Debtor paid Mark Willman $80,000 in salary and almost $200,000 in shareholder distributions to the

Willmans (ECF #153 at Page 27). The Debtor has continued to make these payments in 2016[4] and plans to assume the lease with the Willmans (ECF #153 at Pages 19, 23, 24; ECF #154 at Page 4). The Amended Disclosure Statement does not explain to creditors how a corporation with just $82,000 in net income justifies such a significant outlay to insiders, especially while the compensation for rank and file employees has not been fully paid.[5]   Thus, the Amended Disclosure Statement does not supply the facts necessary for an informed decision by creditors.

11.     Finally, the Amended Disclosure Statement and Plan contain the following additional deficiencies: Exhibit 5 is too small to be readable (ECF #153 at Page 31); and there is no summary of Monthly Operating Reports attached to the Amended Disclosure Statement (ECF #153 at Page 30). The Debtor states that it sold a pick-up truck during the pendency of the bankruptcy case, but does not identify the purchaser, the amount received, or any other information that would help to assure creditors that a fair price was achieved (ECF #153 at 8).

WHEREFORE the Creditors, International Union of Operating Engineers, Local 150, AFL-CIO (hereafter, "Local 150" or "the Union"); Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 IUOE Vacation Savings Plan; Midwest Operating Engineers Retirement Enhancement Fund; and Construction Industry Research and Service Trust Fund, pray the Court sustain the above-captioned Objection to Amended Disclosure Statement and Objection to Modified Ch. 11 Plan Before Confirmation and for all other relief the Court deems just and equitable.

---

[4] The Debtor only paid $34,000 in shareholder distributions through September 30, 2016, but we are not told on what schedule such distributions are made (ECF #153 at Page 23). Accordingly, the Debtor may yet make distributions at 2015 levels.

[5] The Willmans have not filed a claim for rent, distributions as shareholders, or salary payments.

/s/ Samuel Z. Marks_____
Samuel Z. Marks  IS9998821
4225 University Avenue
Des Moines, Iowa 50311
Phone 515.276.7211
FAX  515.276.6280
ATTORNEY FOR CREDITORS
INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 150, AFL-CIO
MIDWEST        OPERATING        ENGINEERS
WELFARE FUND
MIDWEST OPERATING ENGINEERS PENSION
TRUST FUND
OPERATING      ENGINEERS      LOCAL      150
APPRENTICESHIP  FUND;  LOCAL  150  IUOE
VACATION SAVINGS PLAN
MIDWEST        OPERATING        ENGINEERS
RETIREMENT ENHANCEMENT FUND
CONSTRUCTION INDUSTRY RESEARCH AND
SERVICE TRUST FUND

## CERTIFICATE OF SERVICE:

By signing above, the attorney certifies that on the 28th day November, 2016, this document was

filed electronically in the United States Bankruptcy Court, for the Southern District of Iowa.  The

parties listed below will receive notice electronically.

/s/ Kathy Andreas

United States Trustee
USTPRegion12.DM.ECF@usdoj.gov

7

L.Ashley.Zubal on behalf of U.S. Trustee United States Trustee
USTPRegion12.DM.ECF@usdoj.gov ashley.zubal@usdoj.gov

H J Dane on behalf of Creditor Eljon Crane, Inc.
hjdane@hjdane.com kayla@hjdane.com elizabeth@hjdane.com

HJ Dane on behalf of Creditor United Construction Co.
hjdane@hjdane.com kayla@hjdane.com elizabeth@hjdane.com

Timothy M Feeny on behalf of Creditor Board of Trustees of Carpenters Fringe Benefit Fund of
Illinois
tfeny@mcfe-law.com pmoller@mcfe-law.com

Gregory N Freerksen on behalf of Creditor Chicago Regional Council of Carpenters local 4
gfreerksen@wmklaborlaw.com tkroll@wmklaborlaw.com

Dale G. Haake on behalf on Debtor Willman Construction, Inc.
dhaake@katzlawfirm.com vkennedy@katzlawfirm.com jcook@katzlawfirm.com

Stephanie L. Hinz on behalf of Creditor Ford Motor Credit Company, L.L.C.
SHinz@pbalawfirm.com dlatino@pbalawfirm.com

Douglas R. Lindstrom, Jr on behalf of Creditor Quad City Bank & Trust Company
dlindstrom@l-wlaw.com kdevoss@l-wlaw.com

Mark D. Walz on behalf of Creditor Central Laborers' Pension, Welfare & Annuity Funds
markwalz@davisbrownlaw.com markwalz@davisbrownlaw.com

John E. Waters on behalf of Creditor Iowa Department of Revenue
IDRBankruptcy@iowa.gov