# United States Bankruptcy Court
## Southern District of Iowa

In re  Willman Construction, Inc.

Debtor(s)

Case No. 16-00774
Chapter 11

## WILLMAN CONSTRUCTION, INC.'S THIRD AMENDED PLAN OF REORGANIZATION, DATED MAY 22, 2017

### ARTICLE I
### SUMMARY

This Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **Willman Construction, Inc.** (the "Debtor") from cash flow from operations, future income and potentially an infusion of capital. Assets also may be sold to fund the Plan.

This Plan provides for **4** classes of secured claims; **3** classes of unsecured claims (priority, general and subordinated); and **1** class of equity security holders. In addition, the Plan provides for payment of unclassified claims. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **50** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Classes P-1 through P-10. All allowed claims (as of Plan filing date subject to verification and objection) entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02    Classes S-1 through S-4. The claims of **Ford Motor Finance, Quad City Bank & Trust and the Internal Revenue Service**, to the extent allowed as secured claims under § 506 of the Code.

   S-1    Ford Motor Credit Company secured by 2016 F350 pickup truck (VIN ENDING: 1929).

   S-2    Ford Motor Credit Company secured by 2016 F350 pickup truck (VIN ENDING: 2156).

   S-3    Quad City Bank & Trust (2013) purported blanket lien on certain assets.

   S-4    IRS purported tax lien (2015) see Proof of Claim.

2.03    Class 3. All general unsecured claims (without priority) allowed under §502 of the Code including undersecured portions of secured claimants' interests.

2.04    Class 4. Subordinated Claims. Any allowed claims subordinated under §510(c) or under any other authority.

2.05    Class 5. Equity interests of the Debtor.

1



## ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01   Unclassified Claims. Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02   Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   Priority Tax Claims. Each holder of a priority tax claim will be paid within 5 years from date of filing or 6 years from date of assessment. The specific treatment of the Iowa Department of Revenue is also described below in section 3.04 and 3.05. PTX holders at present are:

| NO. | CLAIMANT | CLAIMED AMOUNT | Class |
|---|---|---|---|
| PTX | Iowa Department of Revenue  (Claim No. 12) | $50,596.12 | No class |
| PTX | Iowa Department of Revenue  (Claim No. 13) | $ 9,880.52 | No class |
| PTX | Internal Revenue Service  (Claim No. 14) | $100,527.64 | No class |
| PTX | Illinois Department of Revenue  (Claim No. 15) | $1,346.07 | No class |
| PTX | Illinois Department of Revenue  (Claim No. 16) | $7,358.92 | No class |
| PTX | Illinois Department of Employment Security (Claim No. 33) | $29,448.00 | No class |

3.04   All tax claims owed to the Iowa Department of Revenue and entitled to priority under 11 U.S.C. §507(a)(8) shall be paid in full, together with interest at a rate of 4.8% per year beginning on the effective date of the Plan, through equal monthly payments commencing on the 15th day of the first month following the effective date and ending August 15, 2021.

3.05   In the event that the Debtor fails to make any payments required by the Plan, the Iowa Department of Revenue may declare the entire amount of its general unsecured and priority claims due and pursue its state law remedies for the collection of unpaid taxes.

3.06   The Internal Revenue Service has a partly unsecured claim of $25,873.56 and is to be paid at 4.0% interest, $478.94 per month for 60 months. Payments to begin September 1, 2017 or within 30 days of effective date of the Plan, whichever is later.

3.07   United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**NOTE:** All claims are subject to verification and objection.

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Unsecured Claims<br>(P-1) Ironworkers Mid-American Pension Plan<br>(P-2) David Rouse<br>(P-3) Ryan Kemp<br>(P-4) Jeff Lee<br>(P-5) All Laborers entities:<br>  a. Central Laborers' Pension Fund, Central Laborers' Supplementary Pension Fund;<br>  b. Northern Illinois & Iowa Welfare Fund, Northern Illinois Annuity Fund;<br>  c. Illinois Laborers' & Contractors Training Program, North Central Illinois Laborers' & Employers Cooperative Education Trust;<br>  d. Northern Illinois & Iowa Laborers' Political League, North Central Illinois Laborers' Building Fund;<br>  e. North Central Illinois Laborers' Working Dues, Midwest Region For Fair Contracting;<br>  f. Laborers' Local #309, and Operative Plasterers & Cement Masons Local #18, Area, 544, and all of their respective affiliated fringe benefit funds for which they are a collection agent, or that are set forth in the various applicable union agreements, by and on behalf of the members of Laborers' Local #309, and Operative Plasterers & Cement Masons Local #18, Area 544; and<br>  g. All of the participants in the above-referenced fringe benefit funds (collectively (a) through (f) above are referred to as "Creditors"). | Impaired | Paid in full over 120 months from effective date of Plan at 3.25% per annum; payments to be made quarterly, first payment due by end of quarter beginning with the quarter after the quarter which included the effective date of the Plan |
| (P-6) All Operators Entities:<br>  a. International Union of Operating Engineers, Local 150;<br>  b. Local 150 IUOE Vacation Savings Plan;<br>  c. MOE Construction Indus. Research and Service Trust;<br>  d. Midwest Operating Engineers Pension Trust Fund;<br>  e. Midwest Operating Engineers Welfare Fund; and<br>  f. Engineers Local 150 Apprenticeship Fund. | Impaired | All P-6 class 3 claims treated as Class 1 claims – paid within 4 years at 5.0%. |
| Classes 2 – Secured Claim of<br>(S-1) Ford | Unimpaired | Paid according to contract; lien retained. |
| (S-2) Ford | Unimpaired | Paid according to contract; lien retained. |
| (S-3) Quad City Bank & Trust | Impaired | Paid over 15 years; *Till* rate. 5.0% Retain lien. Agreed no guarantor collection activity. |
| (S-4) IRS | Impaired | (S-4) IRS Secured portion (non-priority) after adjudication/agreement at 100% over 120 months from effective date, with interest at 3.0%, compounding annually. |

| | | |
|---|---|---|
| | | Payments to begin September 1, 2017 or within 30 days of the effective date of the Plan at $1,309.45 per month for 120 months. IRS has a first priority lien valued at $135,608.47 in accounts receivable arising after May 30, 2016.<br><br>Numbers provided by Ellen Willman show, as of December 21, 2016, A/R of $821,507.11 arising before 5/30/16, and $207,976.33 of A/R arising after 5/30/16. QCB&T retains first priority lien to the entire pre-5/30/16 amount, while IRS has first priority to $135,608.47 of the post-5/30/16 amount.<br><br>**(Priority Unsecured Claim):** IRS has an unsecured priority claim of $100,527.64 as shown above in paragraph 3.03.<br><br>"All tax claims owed to the Internal Revenue Service, and entitled to priority under 11 U.S.C. 507(a)(8) [i.e., **unsecured** priority], shall be paid in full, together with interest at a rate of 4.0% per year beginning on the effective date of the Plan, through 60 equal monthly payments of $1,848.13, commencing on September 1, 2017 or within 30 days of the effective date of the Plan whichever comes later. |
| Class 3 - General Unsecured Creditors | Impaired | Paid 50% over 240 months from effective date of Plan at 0% per annum; payments to be made quarterly, first payment due beginning in the 121st month and payable by the end of such quarter. |

| | | |
|---|---|---|
| Class 4 - Subordinated Claims | Impaired | Paid 50% over 240 months from effective date of Plan at 0% per annum; payments to be made quarterly, first payment due beginning 200th month and payable by the end of such quarter. |
| Class 5 - Equity Security Holders of the Debtor | Unimpaired | Equity security holders retain their interests. Have injected or will inject (including Quad City Bank & Trust payments) of over $200,000. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

    a. The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan.

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| Altorfer Inc. | Oral contract - bucket excavator (4/13/16-5/13/16) (order entered) |
| BSI Constructors | Subcontractors on Parker Bldg contract |
| Central Laborers | (see below) |
| Delta Dental | Dental provider |
| G&K Services | Office rug rental |
| Genesis Maintenance | D-I-P is on-call subcontractor |
| Hussmann | Walmart tear-out; misc. construction |
| Integrated Technologies | Sub-structure for tank base frame |
| International Union of Operating Engineers | Union agreement (see below) |
| Iowa Mutual | Worker's compensation & liability |
| Iron Worker Mid-American Pension Fund | Union agreement |

5

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| Katz Nowinski P.C. | Retainer Agreement for legal services |
| Laborers' Local Union No. 309; Local 32; Local 165 | Continuing (60 days notice prior to change) |
| Mark & Ellen Willman | Month to month real estate lease for 1129 W. 3rd St. Davenport, Iowa |
| Mediacom | Utilities |
| Midwest Insulation Contractors Assoc. of Eastern IA & Western IL (Local 81) | Continuing (90 days notice of intention to change) |
| Modern Piping | Misc. work |
| Modern Piping | Demo locker room |
| Modern Piping | Bldg boiler room |
| Operating Plasterers & Cement Masons Local 18 of Central Illinois | Union agreement |
| Orkin Exterminating | Pest control services |
| Premier Plaster and Drywall | Construction contract |
| RK Dixon | Office equipment |
| Rock Island Integrated Services | Repair boat dock anchors |
| Ryan & Associates Inc. | Install storm sewer & water main |
| Ryan & Associates Inc. | Insulate & PVC JKT 3' condensate |
| Ryan & Associates Inc. | Repair insulation after heat trace and others |
| Sheriff Kevin W. Turner | Masonry, restoration and window replacement at Jo Daviess Courthouse/completed |
| Shive Hattery | Masonry restoration and window replacement |
| Tri-State Construction Services Inc. | Equipment rental |
| United Fire & Casualty | Bond for new Rock Island Arsenal job. (W52P1J-15-5004) |
| United Healthcare | Group health insurance |
| US Oil Bettendorf Terminal | Pipe support asphalt patch |
| Verizon | Cell phone contract |
| Dept. of the Army Garrison Contracting Branch | W52P1J-15-5004 |
| Western Structural Steel | Construction contract |

    b. The Debtor also expressly assumes the below-described executory contracts:

        i. All Laborers' entities listed below:
1. Great Plains Laborers' District Council affiliated with Laborers' International Union of North America ALF-CIO Memorandum of Agreement- executed with Laborers' Local # 32 - May 8, 2013;
2. Central Laborers' Funds Participation Agreement - executed with Laborers' Local #32- May 8, 2013;
3. Central Laborers' Funds Participation Agreement - executed with Laborers' Local# 165- May 8, 2013;
4. Collective bargaining agreement with 309;
5. Collective bargaining agreement with Operative Plasterers and Cement Masons Local 18; and
6. Memorandum of agreement with Great Plains Laborers' District Council regarding locals 32, 43, 165, 177, 205, 231, 309, 340, 353, 362, 393, 538, 568.

    ii. All Operators' entities listed below.

      1. International Union of Operating Engineers, Local 150;
      2. Local 150 IUOE Vacation Savings Plan;
      3. MOE Construction Indus. Research and Service Trust;
      4. Midwest Operating Engineers Pension Trust Fund;
      5. Midwest Operating Engineers Welfare Fund; and
      6. Engineers Local 150 Apprenticeship Fund.

  c. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon a date not to exceed 60 days after the entry of the order of confirmation. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **180** days after the date of the order confirming this Plan. Certain rejections are being considered.

  d. Certain rejections are being considered.

  e. The following executory contracts are rejected.

    - Central Illinois Carpenters
    - Carpenters entities of all description
    - Honcamp & Krueger/Steve Campana

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

  Willman Construction, Inc. faces substantial and daunting problems. It has a tax lien, imposing union obligations, and a substantial body of unsecured creditors. It is working without a line of credit. However, Willman Construction, Inc. has a substantial reputation of high quality contractual work; on time, within budget, with a minimal amount of issues. As a result, it has substantial ongoing contracts. It is in high demand with large contractors in and around the Quad Cities and the greater region. While Willman has oftentimes acted as a general contractor in the past, it has been acting primarily as a subcontractor on most jobs post-petition.

  As of date of filing, Willman's accounts receivable stood at $286,000.00. (This figure has been adjusted upwards from the original $229,000.00.) The work-in-process billed and to be billed now stands at $3.9 million.

  Willman Construction, Inc. is operated by Mark and Ellen Willman. No one else can operate the business. The other related entity, Tri-State Construction, Inc. has primarily serviced Oscar Mayer/Kraft, but it had expanded after the Carpenters' dispute. It was a non-union shop. While it now is totally inactive, it became union in September 2016. Willman is union. Tri-State has now contracted. All new Kraft contracts have been taken over by Willman.

  Willman will continue to carefully bid, work with its trusted partners, and improve its margins. The cash flows used revenue reduced from $5.0 million actual to $4.0 million per annum proposed. A post-confirmation reduction in administrative expenses will greatly assist cash flow. While this Plan is at 50% to unsecured; 100% will cash flow according to CPA and draft cash flows. This is the case even with the adjustments to classes (many Class 3 claims now entitled to Class 1 treatment).

7

Two entities are holding their accounts payable to the Debtor-in-Possession, BSI and Russell Construction in the approximate amounts of $41,064.00 and $11,246.00, respectively. Such amounts are being allegedly contractually withheld. Such amount shall be paid into escrow and creditors claiming any amounts from BSI or Russell shall have 60 days to make a claim or the amounts are to be used generally by the Debtor-in-Possession in the ordinary course of business and consistent with this Plan.

To assume the Laborers' entities executory contracts; and to assume the Operators' entities executory contracts, Debtor-in-Possession must cure the default at confirmation or shortly thereafter. [This part of law is conceded for this case only!] Each set of which entities agree that the cure is to be treatment as a Class 1 claimant instead of a Class 3 claimant for any and all separately classified Class 3 claim to be assumed and to be classified and voted as a Class 1 claim.

This Third Amended Plan contemplates that the Laborers' entities would have broken down their original claim into correct fund claimants. Whether same is enough to avoid a cram-down is unclear; Debtor-in-Possession seeks one, if necessary. Finally, the equity holders have already put in since filing – or within 45 days of filing, over $300,000.00 of personal funds. It is suggested that this is enough to "purchase back" their shares; especially in a closely held company the Chapter 7 value of which is close to zero; and which cannot operates (maybe a few contacts) without Mark Willman, Ellen Willman, and Matt Willman. Be that as it may, Mark Willman and Ellen Willman are prepared to pledge another $100,000.00 into the Plan. The "market testing" may be accomplished, however, the Court might deem appropriate; but, once again, in this case, that is superfluous.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02    Effective Date of Plan. The effective date of this Plan is the first business day following the date that is thirty-one (31) days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Iowa govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. Unless a contract is to be performed in the State of Iowa, in which case the substantive law of the State of Illinois shall apply.

8.07    Corporate Governance. If the Debtor is a corporation include provisions required by § 1123(a)(6) of the Code.

8.08    Default Provisions - IRS. If the reorganized debtor substantially defaults on the plan payments due to the IRS, the outstanding balance is immediately due and payable. Payment shall be for the entire amount owed to the IRS under the plan. The IRS may collect these unpaid tax liabilities through the administrative collection provisions of the Internal Revenue Code.

## ARTICLE IX
## DISCHARGE

9.01    Discharge. On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

## ARTICLE X
## OTHER PROVISIONS

Respectfully submitted,

By: _____
**Mark Willman**
President, Willman Construction, Inc.

By: _____
**Dale G. Haake 03124381**
Attorney for Willman Construction, Inc.

S:\DGH\PLEAD\19743-1.Willman.Third.Amended.Plan.docx

9